[No. 13319. *En Banc.* January 4, 1917.]

*In the Matter of the Estate of* REBECCA W. CUNNINGHAM.
FIDELITY NATIONAL BANK OF SPOKANE, *Appellant*, v.
W. R. CUNNINGHAM, SENIOR, *as Executor*,
*Respondent.*[1]

WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSON SINCE DE-
CEASED—"ADVERSE" PARTY." Under Rem. Code, § 1211, excluding the
testimony of a party in interest or to the record, as to transactions
had with a party since deceased where the adverse party sues or
defends as executor etc., an executor is an adverse party within the
rule, in a proceeding brought by a creditor to compel the executor
to inventory certain property as community property in order to
satisfy community debts.

SAME—COMPETENCY—TRANSACTION WITH PERSON SINCE DECEASED
—ADVERSE EVIDENCE. Upon an attempt by a creditor to subject the
deceased's wife's property to a community debt, evidence by the ex-
ecutor and his son that the property was in one instance a gift from
the son to the mother, and in another a gift from the husband to
the wife and that no community funds entered into the transactions,
is not evidence "adverse" to the estate, nor is it inadmissible as
testimony of a party in interest as to any transaction had with or
statement made to or by the deceased, within Rem. Code, § 1211, ex-
cluding such testimony; and the statute does not exclude testimony
that is not "adverse."

Appeal from a judgment of the superior court for Adams
county, Linn, J., entered November 1, 1915, upon findings
in favor of the executor, in proceedings by a creditor to sub-
ject property to administration. Affirmed.

*F. E. Langford, Lucius G. Nash,* and *Adams & Naef,* for
appellant.

*Walter Staser* and *C. H. Spalding,* for respondent.

MORRIS, C. J.—Appellant, as a creditor of the estate of
Rebecca Cunningham, brought this proceeding to compel the
executor to inventory certain property as community prop-
erty in order to satisfy appellant's claim as a community

[1]Reported in 161 Pac. 1193.

debt, the basis of the petition being that the property was acquired during coverture and was community property, rather than the separate property of the deceased as claimed by the executor. Issues were framed as to the character of the property, and the lower court finding the same to be the separate estate of the deceased, this appeal was taken.

The character of the property depends largely upon the testimony of the executor and his son, and the error relied upon by appellant is the inadmissibility and incompetency of this testimony. The controlling statute is Rem. Code, § 1211, providing:

"No person offered as a witness shall be excluded from giving evidence by reason of his interest in the event of the action, as a party thereto or otherwise; but such interest may be shown to affect his credibility; Provided, however, that in an action or proceeding where the adverse party sues or defends as executor, administrator, or legal representative of any deceased person, or as deriving right or title by, through, or from any deceased person, or as the guardian or conservator of the estate of any insane person, or of any minor under the age of fourteen years, then a party in interest or to the record shall not be admitted to testify in his own behalf as to any transaction had by him with or any statement made to him by any such deceased or insane person, or by any such minor under the age of fourteen years: Provided further, that this exclusion shall not apply to parties of record who sue or defend in a representative or fiduciary capacity, and who have no other or further interest in the action."

The executor was clearly an adverse party within the rule, and if his testimony, or that of the son, was adverse to the estate it was clearly inadmissible. The testimony of both the executor and the son was not, however, adverse to the estate, nor was either of them permitted to testify to any transaction had with or statement made to or by the deceased. The testimony was to the effect that the property was in the one instance a gift from the son to the mother; and in another a gift from the husband to the wife, made many years ago; that in neither case was any money or property advanced by

the deceased as a consideration for the gift, nor did any community funds or property enter into the transaction.

The evident purpose of this statute is to prevent those whom it covers from detailing any transaction with the deceased which it would be to the interests of the deceased if living to deny. This purpose has been expressed thus: death having closed the lips of one party, the law closes the lips of the other. The inhibition is for the benefit of the estate to shield it from the enforcement of claims that otherwise could not be defended against. It is not to be used as a sword to deprive the estate of beneficial evidence because death has deprived the estate of testimony that otherwise would be admissible. In other words, living mouths are closed when death prevents adverse testimony, but not when death only prevents confirmatory or supporting evidence. This was the view expressed in *O'Connor v. Slatter*, 46 Wash. 308, 89 Pac. 885, where, in interpreting this statute upon a like claim of error, it was said:

"From a careful consideration of the language of this statute and the object of its enactment, we conclude that it does not disqualify an interested witness on the part of the estate."

This language was used in sustaining the contention then made that the statute excludes only those witnesses whose testimony is adverse as to the estate of the deceased person. The *O'Connor* case was again before this court in 48 Wash. 493, 93 Pac. 1078. The former ruling was there adhered to, the court adding:

"The prohibition of the statute, however, extends only to transactions had by the appellant with the deceased or to statements made to the appellant by the deceased. It does not extend to every fact to which the deceased might testify if living."

A like view of this statute was voiced in *Nicholson v. Kilbury*, 80 Wash. 500, 141 Pac. 1043, where it was said:

"The statute means that a party in interest is not to make himself a vehicle to carry the words of his deceased adversary into the record of a contested proceeding."

These cases determine the rule. They are in line with the modern interpretation that statutes of this character should not be extended beyond their language when the effect of such extension will be to add to the list of those rendered incompetent as witnesses. *St. John v. Lofland*, 5 N. D. 140, 64 N. W. 930.

The judgment is affirmed.

HOLCOMB, MAIN, MOUNT, PARKER, and FULLERTON, JJ., concur.